WILLIAM V. DORWIN v. NATHAN PATTON and Others.[1]

June 14, 1907.

Nos. 15,221—(144).

**Fraudulent Conveyance.**

>    Under the facts of this case, as found by the trial court, it does not
>    conclusively appear as a matter of law that respondent intended to de-
>    fraud his creditors by making a voluntary conveyance of certain real es-
>    tate to his daughter.

Action in the district court for Wabasha county by plaintiff, as
trustee in bankruptcy of defendant Nathan Patton, to set aside a deed
of conveyance of certain real estate. The case was tried before Olin
B. Lewis, J., who found in favor of defendants. From a judgment
entered pursuant to the findings, plaintiff appealed. Affirmed.

Webber & Lees and Richmond, Jackman & Swansen, for appellant.
W. E. Plummer, Wesley Kinney and J. C. McClure, for respondents.

LEWIS, J.

In 1899 respondent Nathan Patton resided at Lake City, Minnesota,
and was the owner of a two hundred acre farm in Lake county, valued
at $6,500, and also owned other property of about the same value.
In January of that year he moved to Durand, Wisconsin, and engaged
in the mercantile business, investing about $5,000 therein, having for
that purpose disposed of all of his property, with the exception of the
farm mentioned. In the fall of 1900 he borrowed $1,000 from the
State Bank of Durand, and $1,500 from the Bank of Mondovi, which
were short-time loans, renewed from time to time. In May, 1901,
he executed and delivered to his daughter, respondent Mary Eliza
Patton, a warranty deed to the farm, in which the consideration was
stated as $1,000, and the deed was recorded in August, 1902. Dur-
ing 1901, 1902, 1903, and 1904 the amount of Patton's indebtedness
steadily increased, until in October, 1904, he became hopelessly in-
solvent; his liabilities amounting to $19,000, and his assets, consisting
of his stock of merchandise and fixtures, amounting to about $6,300.
In October of that year he executed a trust deed for the benefit of his

[1] Reported in 112 N. W. 266.

creditors, and the trustees took possession of all of his property, converted the same into cash, and paid a dividend of thirty per cent. on his indebtedness.

Suit having been brought against him by the Bank of Mondovi to recover $1,500, Patton filed a petition in bankruptcy in the United States court, and this action was commenced by the trustee in bankruptcy for the purpose of setting aside the conveyance by which Patton deeded the farm in question to his daughter. The court found that claims to the amount of $9,000 were filed and allowed in the bankrupt court; that May 14, 1901, by warranty deed, Patton conveyed the farm to his daughter, and that at the date of such conveyance he was solvent; that the value of his assets at such time, including his stock of merchandise and furniture, and excluding the land in question, was approximately $8,800, and the amount of his entire indebtedness, exclusive of the amount he claimed to be owing his daughter, the grantee, was approximately $4,000—$1,000 of which was owing to the State Bank of Durand. The court also found that the conveyance to the daughter was made without any consideration, but that none of the existing creditors of Patton ever extended to him any credit based upon his alleged interest in the farm.

The trial court denied the relief sought by the trustee, and one question only is presented on this appeal, viz.: Conceding that on May 14, 1901, Patton was solvent, yet under the undisputed facts, as found by the court, does it conclusively appear that the conveyance to the daughter was made in contemplation of and for the purpose of defrauding his creditors? Appellant insists that it so appears from the evidence, viewed with reference to the proposition of law that, when it is shown an indebtedness exists, a voluntary conveyance of a substantial part of the debtor's property carries the presumption that the purpose was to avoid payment of the debts.

We shall assume as correct the proposition that the deed was prima facie void as to the then existing creditors, and that to sustain the conveyance it must appear that at the time Patton was possessed of ample property over and above that conveyed to satisfy all existing demands against him. It is true there are many circumstances which, in themselves, might indicate that Patton was anticipating financial trouble and that it was his purpose to put the farm beyond the reach

of his creditors; but the trial court was required to view the question from the standpoint of the parties on May 14, 1901, and not be unduly influenced by subsequent occurrences. The fact that from 1901 until the time he was forced into bankruptcy his indebtedness increased from year to year does not alone require the conclusion that in May, 1901, he anticipated such results and made preparation accordingly. It is a rather forced assumption that he would remain in business from month to month and from year to year for the express purpose of creating an indebtedness from which to escape liability. The record shows that his business developed in extent; that he, his daughter, and other members of the family devoted themselves to it; and there is no direct evidence of any intent to overreach his creditors. The original loans by the State Bank of Durand ran only for a few months at a time and were frequently renewed. There is no evidence that the banks renewed those notes, relying on respondent's ownership of the farm, or that any of his creditors advanced him credit upon that basis. On the contrary, it conclusively appears that at the time the trust deed was made in 1904 it was known and understood that the farm had long before been conveyed and was not a part of his assets.

As to the moral question, it has very little to do with the question involved, and yet it is not unnatural that at the time when he believed himself to be, and was in fact, solvent, as found by the court, he should desire to make provision for some of his children, and we discover nothing particularly important in the fact that he conveyed the farm to his oldest daughter. Whatever may have been their intention or understanding as to the future disposition of it, it does not conclusively appear that the understanding was that the daughter was to hold the farm in trust for her father, in order that it might be beyond the reach of his creditors. The fact that he collected the rents for her, and that the same were used in the business, might to some extent indicate that Patton still assumed dominion and ownership over the farm, yet such use of the proceeds might also indicate good faith, that he believed in his solvency and ability to carry on his business and pay his creditors in full, and that the daughter acquiesced in such use of the money. We consider the question one of fact, and that the findings sustain the conclusion of the trial court.

Judgment affirmed.